**Ardale CALVIN et al., Plaintiffs,**

**v.**

**James B. CONLISK, Jr., et al.,**
**Defendants.**

**No. 72 C 3230.**

United States District Court,
N. D. Illinois, E. D.

Nov. 8, 1973.

2. Filed May 25, 1973, C.A.Tenn., Eastern Section.

Robert C. Howard, Kermit B. Coleman, Clare E. Benford, Robert W. Bennett, Martha Jenkins, Lawrence E. Kennon, Marshall Patner and Alexander Polikoff, Chicago, Ill., for plaintiffs.

Richard L. Curry, Corp. Counsel of City of Chicago, and Michael S. Jordan, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDERS

PERRY, Senior District Judge.

In this civil rights action seven individual plaintiffs and three organizations seek, among other things, an injunction to remedy an alleged failure of the Chicago Police Department to enforce constitutional standards of conduct among police officers. They ask the court to use its equitable powers to order the City of Chicago, the Superintendent of Police and Members of the Police Board to adopt and implement an effective police discipline system, which plaintiffs allege does not exist in various respects. They further pray the court to retain jurisdiction for continuing judicial surveillance.

The seven individual plaintiffs allege they were abused in incidents of alleged police brutality, which incidents it appears were separate and unrelated. The organization plaintiffs, namely the Afro-American Patrolmen's League, Concerned Citizens for Police Reform and the Chicago Urban League, state in the complaint that they have received complaints of police misconduct from hundreds of persons and that they share a common concern for improved race relations and an improved disciplinary system within the Chicago Police Department.

Defendants include individual policemen who plaintiffs allege participated in the acts of police abuse and they are sued for damages. Defendants City, Superintendent and Police Board Members are charged with failure to fulfill their duty to maintain an effective police disciplinary system and plaintiffs, in essence, allege their actions condone and permit, rather than deter, unconstitutional standards of conduct among police officers. Plaintiffs sue the Superintendent and Board members for injunctive relief and ask both that form of relief and damages as to the City.

More specifically, plaintiffs state in their complaint that they seek such declaratory and injunctive relief and dam-

ages to redress deprivations under color of law of rights, privileges and immunities secured by the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Title 42 U.S.C. Section 1983. In the original complaint jurisdiction was invoked under Title 28 U.S.C. §§ 1343(3), 1343(4), 2201 and 2202, and plaintiffs set forth that as the action arises under Section 1343(3) no jurisdictional amount is required. (Plaintiffs later moved to amend their complaint as hereinafter set forth).

Shortly after the complaint was filed the defendants filed motions to dismiss. Upon consideration of the motions and memoranda of the parties, the court on April 20, 1973 denied the various motions to dismiss and to strike and dismiss except that it struck that portion of the complaint seeking damages against the City of Chicago.

Subsequently the Supreme Court of the United States handed down decisions in two cases, City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109, and Gilligan v. Morgan, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407, and in light of these decisions the parties have filed various new motions.

Defendants have moved the court to reconsider its order of April 20, 1973 denying their motion to strike plaintiffs' complaint and dismiss their cause of action on the grounds stated in their original motion of January 15, 1973, and upon the additional ground that plaintiffs' complaint does not present claims that are justiciable, and based upon the decision of the United States Supreme Court in the *Gilligan* case. The court has reconsidered its earlier order and has considered the memoranda of the parties in support of and in opposition to both the original motions to dismiss and the new one to reconsider.

The *Gilligan* case arose out of a period of civil disorder on the campus of Kent State University in May 1970. Plaintiffs there filed an action on behalf of themselves and all other students at the state university, alleging that the National Guard, which was called by the Governor to preserve order, violated students' rights of speech and assembly and caused injury and death to some students. Among other things injunctive relief was sought to restrain the Governor from prematurely ordering National Guard troops to duty in civil disorders and to restrain Guard leaders from future violation of students' constitutional rights. The District Court dismissed the suit on the ground that the complaint failed to state a claim upon which relief could be granted. On appeal the dismissal was affirmed in part but the Court of Appeals remanded to the District Court with directions that it resolve the question whether there was and is "a pattern of training, weaponry and orders in the Ohio National Guard which . . . require . . . the use of fatal force in suppressing civilian disorders when the total circumstances are such that nonlethal force would suffice to restore order . . . ." Certiorari was granted to review the action of the Court of Appeals.

Chief Justice Burger delivered the opinion of the Court in *Gilligan* and stated, at page 5, 93 S.Ct. at page 2443:

> We can treat the question of justiciability on the basis of an assumption that respondents' claims, within the framework of the remand order, are true and could be established by evidence. On that assumption we address the question whether there is any relief a District Court could appropriately fashion.

> It is important to note at the outset that this is not a case in which damages are sought for injuries sustained during the tragic occurrence at Kent State. Nor is it an action seeking a restraining order against some specified and imminently threatened unlawful action. Rather, it is a broad call on judicial power to assume continuing regulatory jurisdiction over the activities of the Ohio National

Guard. This far-reaching demand for relief presents important questions of justiciability.

Respondents continue to seek for the benefit of all Kent students a judicial evaluation of the appropriateness of the "training, weaponing and orders" of the Ohio National Guard. They further demand and the Court of Appeals remand would require that the District Court establish standards for the training, kind of weapons, scope and kind of orders to control the actions of the National Guard. Respondents contend that thereafter the District Court must assume and exercise a continuing judicial surveillance over the Guard to assure compliance with whatever training and operations procedures may be approved by that court. Respondents press for a remedial decree of this scope, even assuming that the recently adopted changes are deemed acceptable after an evidentiary hearing by the court. Continued judicial surveillance to assure compliance with the changed standards is what respondents demand.

The Court held that no justiciable controversy was presented in *Gilligan* because the relief sought by respondents "requiring initial judicial review and continuing surveillance by a federal court over the training, weaponing and orders of the Guard, would therefore embrace critical areas of responsibility vested by the Constitution in the Legislative and Executive Branches of the Government".

As the Chief Justice said at page 8, 93 S.Ct. at page 2445:

. . . It would be inappropriate for a district judge to undertake this responsibility, in the unlikely event that he possessed requisite technical competence to do so.

Leaving aside the suits of the individual plaintiffs against the policemen for damages, there are many analogies between this suit and *Gilligan*, particularly on the main issue as to whether the court has the right to review, order and continue judicial surveillance. Plaintiffs here in their prayer for relief ask the court to grant a permanent injunction "commanding" the Superintendent, Police Board and City, among other things, "to take all appropriate steps within their power to prevent police officers from engaging in unconstitutional misconduct", "to adopt and implement an effective police discipline system", to correct "other deficiencies in the organization and operation of the police discipline system". They also ask the court to permit non-police personnel to receive and investigate complaints of unconstitutional misconduct. They further ask the court to retain jurisdiction and require the Superintendent, Board and City "to report to the Court the steps they have taken to implement and conform with the Court's Order, such reports to be made at three month intervals for at least three years."

The court on the main issue can see dissimilarities but not real differences in the two cases. *Gilligan* it is true involved a single extraordinary incident. Here there is a series of unrelated acts of alleged misconduct by policemen and an allegation that police officials are following a course of conduct which fails to deter acts of unconstitutional misconduct. The National Guard (military) was involved in *Gilligan* while a municipal police force (civilian) is involved here. It is true that the National Guard adopted new rules and revised its training and that the plaintiffs in *Gilligan* were no longer students at Kent and the named defendants were no longer in office. In the instant case there are allegations of continuing and future injury. But as Chief Justice Burger said (at page 5, 93 S.Ct. 2443), the court was not deciding the case on mootness but on whether the claims would present issues that are justiciable.

Plaintiffs here do not seek to have the court involve itself in "weaponing" but certainly when the court is asked to command the Superintendent, Board and City to take "all appropriate steps within their power" to prevent police offi-

cers from engaging in unconstitutional misconduct they are seeking judicial action beyond discipline and including "training" and "orders".

The Court in *Gilligan* spoke of "complex, subtle and professional decisions". It seems to this court that the plaintiffs here are asking the court to involve itself in the same kinds of decisions which the Supreme Court says clearly are appropriately vested in the branches of government which are subject to electoral accountability. It is the kind of responsibility which the Court in *Gilligan* found was "inappropriate" for a District Judge to undertake.

The Court has not overlooked the last paragraph in *Gilligan* wherein the Chief Justice said that in concluding no justiciable controversy is presented, "it should be clear that we neither hold nor imply that the conduct of the National Guard is always beyond judicial review or that there may not be accountability in a judicial forum for violations of law or for specific unlawful conduct by military personnel, whether by way of damages or injunctive relief".

■ In construing civil rights statutes the courts have given equitable complaints a broader scope of applicability than complaints for damages, such as in Schnell v. City of Chicago, 407 F.2d 1084 (7th Cir. 1969). It is upon *Schnell* and Lankford v. Gelston, 364 F.2d 197 (4th Cir. 1966) and that line of cases on which plaintiffs rely in alleging the propriety of judicial action. In the *Lankford* case there was "a series of the most flagrant invasions of privacy ever to come under the scrutiny of the federal court" and "the effectuation of a plan conceived by high ranking officials". In *Schnell* there was a deprivation of constitutional rights of photographers by threats of force and a deliberate concealment of officers' identity by removal of name badges. Plaintiffs also cite the case of Gerald G. Good, et al. v. James H. J. Tate et al., D.C., 357 F.Supp. 1289, and a related case, decided March 14, 1973 in the District Court for the Eastern District of Pennyslvania, wherein it was charged that police superiors by failing to take appropriate and related disciplinary action condoned illegal and unconstitutional activities, and the District Judge there did order the submission for its approval of a comprehensive program for the handling of citizens' complaints alleging police misconduct. It is distinguishable in various respects. It is a district court decision which has not met the test of judicial review, is not binding upon this court and will not be followed by this court.

■ Plaintiffs here have joined the damage actions of seven individuals against 10 named police officers and a number of "John Doe" defendants in support of their allegations that there is a "pattern" or "practice" of unconstitutional conduct by policemen. In addition the organization plaintiffs allege they have received complaints from hundreds of persons of police misconduct. Plaintiffs do not allege specific acts of misconduct involving deprivation of civil rights against the City, Superintendent and Police Board as the individual plaintiffs allege against the police officers. Rather they allege a nexus between police disciplinary procedures and police misconduct and charge that the police administrators have condoned, tolerated or permitted a continual recurrence of violations of civil rights and that this is appropriate for adjudication.

They ask the court to inject itself into the management and administration of the police department and to order the City, Superintendent and Police Board to cure what they allege is an ineffective discipline system. But these matters are not justiciable. And the court believes the claims here as to the City, Superintendent and Board members are not claims upon which it can entertain the question of relief without involving itself in those areas of responsibility left to the legislative and eventually to the executive branches of government. They are subjects committed to the General Assembly of the State of Illinois and City Council of the City of Chicago,

accountable under the elective process. Chap. 24, Section 10–1–18.1, Ill.Rev. Stats. (1971); Chapter 11, Municipal Code of Chicago. There are procedures for review of disciplinary proceedings. There is recourse in the Federal Courts under Section 1983 for persons who allege their rights have been violated by another person acting under color of law, just as the individual plaintiffs here allege against the individual policemen. The court is not dismissing these damage actions of the individuals against the policemen.

Although the court has analyzed *Gilligan* at length, it obviously does not base its opinion here solely on that single decision of the Supreme Court. The parties have filed extensive memoranda in connection with the original motions to dismiss and the present one and the court has considered the many cases cited therein. In *Gilligan*, the Supreme Court considered some of these cases and *Gilligan* is the last word on the main issue here involved.

Defendant City of Chicago also seeks dismissal here in light of the Supreme Court's decision in *Kenosha, supra,* which further clarified the immunity of municipal corporations under § 1983 of the Civil Rights Act and eliminated 28 U.S.C. § 1343 jurisdiction over municipalities.

In the *Kenosha* case the owners of retail liquor establishments had been denied renewal of their one-year-liquor licenses and brought suit under 42 U.S.C. § 1983 for declaratory and injunctive relief against the cities of Racine and Kenosha, claiming deprivation of procedural due process and unconstitutionality of the local licensing procedure. A three-judge court held that in the light of the equitable nature of the actions it had jurisdiction under 28 U.S.C. § 1343 and declared the statutory scheme unconstitutional and enjoined its enforcement. (The Supreme Court in its decision notes that the District Court relied on *Schnell, supra,* and Adams v. City of Park Ridge, 293 F.2d 585 (7th Cir. 1961) "in holding that *Monroe* was lim-

ited to actions for damages, and that cities were proper defendants under § 1983 where equitable relief was sought".) Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

In its 8 to 1 decision on June 11, 1973 the Supreme Court held in *Kenosha* that a city is not a person under 42 U.S.C. § 1983 where equitable relief is sought any more than where damages are sought and that the court erred in concluding it had jurisdiction over the complaints under 28 U.S.C. § 1343. In the decision delivered by Justice Rehnquist, the court stated, at 412 U.S. 22, 93 S.Ct. 2226:

> We find nothing in the legislative history discussed in *Monroe*, or in the language actually used by Congress, to suggest that the generic word "person" in § 1983 was intended to have a bifurcated application to municipal corporations depending on the nature of the relief sought against them. Since, as the Court held in *Monroe*, "Congress did not undertake to bring municipal corporations within the ambit of" § 1983, 365 U.S. at 187 [81 S. Ct. 473], they are outside of its ambit for purposes of equitable relief as well as for damages. The District Court was therefore wrong in concluding that it had jurisdiction of appellees' complaints under § 1343.

The City of Chicago thereupon moved this court to reconsider its order of April 20, 1973, wherein the City's motion to dismiss was allowed only as to the portion of plaintiffs' complaint wherein money damages were being sought, and to dismiss the City as a party defendant for even plaintiffs' claim for injunctive relief based upon the Supreme Court's decision in the *Kenosha* case. In light of the Supreme Court's additional clarification of municipal immunity, it then appeared the court would have to grant the City's motion to dismiss. However, in the *Kenosha* case the Supreme Court had noted the assertion of 28 U.S.C. § 1331 jurisdiction as an alternative ground of jurisdiction and it remanded the case for consideration of

the availability of § 1331 jurisdiction. So shortly after the city's filing of its motion to dismiss based on *Kenosha,* the plaintiffs sought to amend their complaint in order to invoke federal jurisdiction under Title 28 § 1331 against the City. On July 20, 1973 plaintiffs presented a substitute motion for leave to amend and this was granted.

The City now asks the court to strike plaintiffs'· substitute amendment to paragraph 2 of the complaint, which reads as follows:

> The Court has jurisdiction of this action under Title · 28 U.S.C. Secs. 1331, 1343(3), 1943(4) [1343(4)], 2201 and 2202. As to each plaintiff and in the aggregate, the amount in controversy exceeds the sum of $10,000 exclusive of interest and costs. Additionally, as to all defendants other than the CITY OF CHICAGO, because the action arises under Sec. 1343 no jurisdictional amount is required.

The court recognizes that there are controlling questions of law as to which there is substantial ground for difference of opinion involved in its ruling that there is no justiciable controversy presented in this case. In the event the court is reversed, there would be a conserving of judicial time if the court here considered plaintiffs' allegation of § 1331 jurisdiction over the City.

In opposition to the City's motion to strike the amendment, plaintiffs contend that the cause of action ·stated by the Complaint "arises under the Constitution of the United States and is therefore a federal question under Section 1331," that the court has "pendent jurisdiction" over their alleged federal question claim against the City "irrespective of the jurisdictional amount", and "that the jurisdictional amount requirement of Section 1331 is fulfilled under either of two theories of measurement: (a) the constitutional rights for which plaintiffs seek equitable protection provide the required amount in controversy and (b) the jurisdictional amount is also satis-

fied from the perspective of the economic impact of the litigation on the defendant City." The City argues that there is not a "judiciable" federal cause of action against the City, "that pendent jurisdiction should not be invoked to join the City as a defendant, and that the jurisdictional amount of Section 1331 is not fulfilled by any plausible theory of measurement."

In *Kenosha* the Supreme Court remanded for consideration of Section 1331 jurisdiction "in view of the state of the record below", stating at 412 U.S. at 22, 93 S.Ct. at 2226:

> . . . The District Court, having concluded that it had jurisdiction to entertain the original complaint under § 1343, understandably did not address itself to the question of whether the intervention of the Attorney General as a party would cure the jurisdictional defect which we now find to exist in appellees' complaints. The District Court also observed that "were not civil rights jurisdiction proper, each of the plaintiffs herein would be able to assert the necessary controversy requirement of Title 28 U.S.C. § 1331." But although appellees in the Racine denial-alleged jurisdiction pursuant to 28 U.S.C. § 1331 as well as § 1343, and in each complaint there was an allegation of an investment in a tavern of at least $20,000, the defendant municipal corporations answered by putting the appellees to their proof as to the amount in controversy. Since the cases were submitted and decided on cross-motions for summary judgment and stipulations of fact, and no stipulation as to the amount in controversy was filed, we cannot say on this state of record whether or not jurisdiction over the complaint was affirmatively established.

There was in each complaint in *Kenosha* an allegation of an investment of at least $20,000 in a tavern. The court remanded because the requisite amount in controversy was not clear on the record and affirmatively .established. In *Keno-*

*sha* there was a specific allegation. In the instant case there is a general allegation in plaintiffs' amendment to the complaint that "as to each plaintiff and in the aggregate, the amount in controversy exceeds the sum of $10,000 exclusive of interest and costs." Since there is no specific allegation the court must look to the face of the complaint. There are no damage claims by any plaintiff against the City. There are damage claims by the individual plaintiffs against the individual policemen and as they arise under Title 28 U.S.C. § 1343 no jurisdictional amount is required.

■■ Plaintiffs here seek injunctive and declaratory relief from the City and therefore the value of the amount in controversy must be determined by the value of the right plaintiffs seek to enforce and enjoin. Federal courts cannot take cognizance under Section 1331 of cases in which rights are not capable of valuation in monetary terms. Kheel v. Port of New York Authority, 457 F.2d 46 (2 Cir.) cert. den., 409 U.S. 983, 93 S.Ct. 324, 34 L.Ed.2d 248.

The case here is similar to Giancana v. Johnson, 335 F.2d 366 (7th Cir. 1964), cert. den., 379 U.S. 1001, 85 S.Ct. 718, 13 L.Ed.2d 702. There the complaint made no express allegations of the essential jurisdictional sum or value and plaintiff argued the jurisdictional sum or value should be inferred. In *Giancana* the court said, at page 368:

> The vital question depends on whether the record shows that "the matter in controversy exceeds the sum or value of $10,000 * * *" so as to give the district court jurisdiction under 28 U.S.C. § 1331.
>
> Courts may not treat as a mere technicality the jurisdictional amount essential to the "federal question" jurisdiction, even in this case where there is an allegedly unwarranted invasion of plaintiff's privacy. The showing of that essential is not a mere matter of form, but is a necessary element. Congress in § 1331 expressed the "federal question" juris-

diction in plain words. The district courts and suitors are bound by the words expressed. Congress could have withheld the jurisdiction entirely, as it did from 1789 to 1875. Or it could have given jurisdiction over suits arising "under the Constitution, laws, or treaties of the United States" simply. But it limited the jurisdiction by including the element of the sum or value of the matter in controversy, and the Congressional will is that unless the sum or value is shown there is no "federal question" presented and no jurisdiction.

The court there went on to say in *Giancana* that "it is no answer to failure to bring his claim within the jurisdictional prerequisite that the value is inestimable."

Plaintiffs aver in their memoranda (1) that the constitutional rights for which they seek equitable protection provide the required amount in controversy or (2) that it can be satisfied from the perspective of the economic impact of the litigation on defendant City. In their second theory under a defendant's viewpoint approach, plaintiffs contend the jurisdictional amount is satisfied from the cost to defendants of compliance with the injunction sought. The pecuniary consequences are speculative. The amount should be determined from the standpoint of the plaintiff. As to plaintiffs' first theory, the court is cognizant of the Seventh Circuit's ruling in Gautreaux v. Romney, 448 F.2d 731 (1971) which included counts under both 28 U.S.C. § 1331 and § 1343. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946) and Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) were against persons (agents of the Federal Government) and alleged a sufficient jurisdictional amount of damages. Plaintiffs have recourse in the state court to assert any state law claims against the City. There are numerous decisions in this District and Circuit holding that the federal court need not exercise pendent jurisdiction. Kerr v. City of Chi-

cago, 424 F.2d 1134 (7th Cir.); Vechiola v. City of Chicago, 244 F.Supp. 45 (N.D.Ill.1965); Hampton v. City of Chicago, reported in 484 F.2d 602 (7th Cir. issued August 24, 1973).

■ This court cannot see that the equitable claim here against the City is so capable of evaluation in monetary terms as to satisfy the jurisdictional amount requirement on either of plaintiffs' two theories. It does not see that plaintiffs have a proper basis on which to allege an amount in controversy as to the City exceeding the $10,000 jurisdictional minimum, individually, or in the aggregate, either ad damnum, or by way of injunctive relief.

■ Lest this court be misunderstood, it here states clearly that it does not consider constitutional rights of plaintiffs "worthless." It is saying that as to the City it is bound by the statutory language of 42 U.S.C. § 1983 and it has no jurisdiction under 28 U.S.C. § 1343. The Supreme Court's ruling in *Kenosha* is the latest in a line of cases holding the City cannot be sued for equitable relief any more than for damages. Having been precluded from asserting § 1343 jurisdiction, plaintiffs have sought to invoke Title 28 U.S.C. § 1331 jurisdiction as to the City. This court is of the opinion that not a general allegation of the requisite jurisdictional amount but specific allegations in dollars and cents are necessary to satisfy the jurisdictional amount requirement under § 1331. The seven individual plaintiffs can and have asserted claims here directly against the individual policemen who allegedly caused the constitutional deprivations. Because those actions arise under § 1343 no jurisdictional amount is required.

More importantly, as this court has found above, a justiciable controversy is not presented here as to the City, Superintendent and Police Board members. In *Gilligan, supra,* the Supreme Court found it would be "inappropriate" for a District Judge to undertake judicial review and continuing surveillance in certain critical areas of responsibility vested by the Constitution in the legislative and executive branches of Government. Here, too, certain areas of responsibility are vested in the legislative and executive branches of Government. Section 10–1–18.1 of Chap. 24 (Ill.Rev.Stats. 1971) establishes the manner of removal or suspension of police officers and employees of a police department in an Illinois city with more than 500,000 population. It sets up guidelines for the creation and administration of a disciplinary system in a police department and says "the Police Board shall establish rules of procedure". Chapter 11 of the Municipal Code of Chicago was enacted pursuant to the discretionary legislative powers vested in the City Council. It provides for the organization and functions of the Chicago Police Department, for the powers and duties of the police force, and the regulation of the police force. The Police Board has promulgated rules for the approximately 13,000 members of the Police Department. The Superintendent of Police has promulgated General Orders as to disciplinary procedures in the event of violations of the Rules promulgated by the Police Board. The disciplining of members of such a police force is an undertaking for which this court was not created.

It makes no difference whether this court believes the discipline system is adequate or not adequate, or that plaintiffs allege the system is ineffective, for when plaintiffs seek to have the court resolve questions on this subject plaintiffs are asking the court to do what the Supreme Court in *Gilligan* said courts should not do. In discussing the responsibility for decisions regarding the composition, training, equipping and control of a military force, the Court in *Gilligan* said, "the ultimate responsibility for these decisions are appropriately vested in branches of the government which are periodically subject to electoral accountability."

As Chief Justice Burger stated in *Gilligan, supra,* page 10 of 413 U.S., page 2446 of 93 S.Ct.,

It would be difficult to think of a clearer example of the type of governmental action that was intended by the Constitution to be left to the political branches, directly responsible—as the Judicial Branch is not—to the elective process. Moreover, it is difficult to conceive of an area of governmental activity in which the courts have less competence.

 Defendants in their motions to dismiss have asked the courts to dismiss plaintiffs Afro-American Patrolmen's League, Concerned Citizens for Police Reform and Chicago Urban League as parties plaintiff upon the ground that they lack standing to join in this suit. The court in its reconsideration is of the opinion that they should be dismissed. They do not plead specific injury from alleged acts of misconduct as do the individual plaintiffs. They allege a common concern for an improved disciplinary system within the Chicago Police Department and state they have received hundreds of complaints of police misconduct. They claim they have a sufficient stake in the controversy to obtain judicial resolution of it. But the judicial resolution they seek is through this court's intervention to review and continue judicial surveillance and that is not a justiciable controversy. The Afro-American Patrolmen's League, which states its membership consists of approximately 1400 Black Chicago police officers, does allege that its members have been adversely affected by the matters alleged in the complaint because the reputations of its members as police officers have been diminished in the community. If the AAPL had a cause of action, such as for defamation, it could have been brought separately. It should not be joined here. The organization plaintiffs are not necessary parties here to protect the rights of the individual plaintiffs in their suits for damages against the individual policemen. The individual plaintiffs are legally competent and are represented by well-qualified and competent counsel.

 Plaintiffs in paragraph 16 of their complaint incorporate numerous allegations of alleged unconstitutional misconduct as set out in Appendix A attached to the complaint. These allegations charge sundry violations of the civil rights of persons who are not named as plaintiffs herein and relate to alleged occurrences beginning in 1959 and subsequent years. Such allegations have no relationship to the complaint of any of the remaining individual plaintiffs and concern allegations against police officers who are not named herein as defendants. In most instances the statute of limitations has long ago run out and no action could lie against any person as appears upon the face of such allegations. Nothing alleged in said Appendix A and incorporated in paragraph 16 is admissible as evidence and is completely irrelevant to the complaint of the individual plaintiffs now left in this cause. Said paragraph 16 should be and it is hereby stricken from the complaint.

 The individual plaintiffs here assert claims directly against the police officers and the motions of the police officers to dismiss the actions of the individual plaintiffs should be and they are hereby denied. However, there is a joinder here of separate and unrelated causes of action. These damage actions should be severed to avoid prejudice as they involve different people, places, dates and times and would involve different testimony, measures of damages and the like. There is ample authority for dismissal of all the plaintiffs because of the misjoinder of individuals and their actions herein which would result in prejudice. However, because all the plaintiffs are represented by the same lawyers and all the defendants by the same lawyers, it would be a waste of judicial time to dismiss the complaint, thereby requiring the seven individuals to file seven separate suits. It is within the discretion of the court to retain jurisdiction of multiple plaintiffs with diverse defendants where they can be a

**486**

severance without prejudice. Prior to trial the court will order a severance of the individual plaintiffs' causes of action for the purpose of trial. Plaintiffs Joshie Johnson and Linda Sanders have executed releases and the court is asked to declare them null and void. They will be taken with the respective actions of the individuals.

 Counterclaims have been filed herein by Police Officers John F. Rafferty, William C. Kuelbs, Thomas Kelly, William Thomas, Antonio Francis, Lawrence F. Foley, Joseph A. Furmanek, Glen Pyle and Michael Tunney. The counterclaims of the defendant policemen are compulsory and the motion to dismiss said counterclaim is not well taken and it is hereby denied, as is plaintiffs' motion to dismiss the counterclaims on the real party in interest issue.

In accordance with the court's foregoing views, it is hereby ordered that the Afro-American Patrolmen's League, Inc., Concerned Citizens for Police Reform and the Chicago Urban League be and they are hereby dismissed as party plaintiffs herein, and that the motions to dismiss this cause of action be granted as to the City of Chicago, James B. Conlisk, Jr., Superintendent of Police, and Marlin W. Johnson, Wilbur Daniels, Paul W. Goodrich, Morgan F. Murphy and Ray Schoessling, members of the Police Board of the City of Chicago.

Defendants John Does 1 through 25 have not been served and no appearance entered for them and therefore the court has no jurisdiction over any of them. It is, therefore, Ordered that each and all of said John Doe defendants be and they are hereby dismissed as defendants in this case.

This court is of the opinion that its orders herein involve controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from these orders may materially advance the ultimate termination of this litigation.