**Ardale CALVIN et al.,
Plaintiffs-Appellants,**

v.

**James B. CONLISK, Jr., etc., et al.,
Defendants-Appellees.**

**No. 74–1289.**

United States Court of Appeals,
Seventh Circuit.

Heard Feb. 21, 1975.

Decided June 30, 1975.

Rehearing Denied Sept. 3, 1975.

Robert C. Howard, Martin H. Redish, Alexander Polikoff, Arthur R. Waddy, Gerald J. Muller, Chicago, Ill., for plaintiffs-appellants.

Richard F. Friedman, Asst. Corp. Counsel, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, PELL and TONE, Circuit Judges.

CUMMINGS, Circuit Judge.

This action was brought under the Civil Rights Act, 42 U.S.C. § 1983, to redress alleged deprivations under color of law of rights, privileges and immunities secured by the First, Fourth, Fifth, Sixth and Fourteenth Amendments.[1] The plaintiffs are seven individuals, the Afro-American Patrolmen's League, Inc., the Concerned Citizens for Police Reform, and the Chicago Urban League. All of the organizational plaintiffs are Illinois not-for-profit corporations. The defendants were twelve named police of-

ficers,[2] the Chicago Superintendent of Police,[3] the five members of the Police Board, and the City of Chicago.

Besides detailing incidents in which the constitutional rights of the individual plaintiffs were supposedly violated by the named policemen and unknown John Doe policemen, the plaintiffs alleged that those incidents of police misconduct "are representative and exemplary of many similar occurrences of misconduct by Chicago policemen against civilians recurring over the course of many years, each of which involves the common element of excessive or unwarranted use of physical force." The complaint further states that unless defendants are enjoined, plaintiffs' and other persons' rights to be free from "excessive or unwarranted physical force by policemen * * *; unlawful arrest without a warrant or probable cause * * *; illegal search and seizure and other arbitrary and abusive police practices" will continue to be violated. Plaintiffs also allege that the Superintendent of Police, the Police Board members, and the City of Chicago

"have the duty to prevent such misconduct and to discipline police officers who engage in it. However, they have failed to fulfill this duty, and have instead followed a course of conduct that condones, and in effect encourages such abusive misconduct. Their course of conduct is manifested particularly in the operation by these defendants of a police discipline system that, as a pattern or practice, does not make thorough investigations of such abusive misconduct and does not take

---

1. Jurisdiction was originally predicated upon 28 U.S.C. §§ 1343(3), 1343(4), 2201 and 2202. By amendment of July 19, 1973, and substituted amendment of July 20, 1973, the plaintiffs added 28 U.S.C. § 1331, asserting that the amount in controversy exceeded $10,000 as to each plaintiff and in the aggregate and that no jurisdictional amount was required as to all defendants other than the City of Chicago "because the action arises under Sec. 1343." 367 F.Supp. at 482.

2. The complaint was also brought against 25 John Doe police officers.

3. James B. Conlisk, Jr. was then Superintendent of Police and therefore named as a defendant. He has been replaced by James Rochford, who should be substituted below as Superintendent Conlisk's successor pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

appropriate disciplinary action against police officers who engage in it."

Plaintiffs further alleged that civil damage suits were an inadequate remedy because they lack deterrent effect. The plaintiffs complained that policemen bear neither the costs of such litigation nor of the final damage judgment, if any, and that adequate disciplinary action is not taken by the Department following a successful civil suit. Plaintiffs therefore sought an injunction against the City and the official defendants,[4] ordering them to take all appropriate steps within their power to prevent police officers from engaging in unconstitutional misconduct and to discipline officers who engage in such misconduct. In that regard, plaintiffs attacked the adequacy of the present internal disciplinary machinery and requested that the court order the institution of an effective police discipline system to handle complaints of unconstitutional police misconduct. Damages were asserted against the defendant police officers for violation of the individual plaintiffs' constitutional rights. Counterclaims were filed by nine of the defendant police officers seeking damages for bodily pain and mental anguish caused by the individual plaintiffs.

In a memorandum opinion[5] relying primarily upon *Gilligan v. Morgan*, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407, the district court granted the motion of the City and the official defendants to dismiss the cause of action against them on the ground that the claim for declaratory and injunctive relief presented a nonjusticiable controversy. 367 F.Supp. at 479–481, 484.

Acknowledging the possibility that its justiciability determination might be reversed on appeal, the district court went on to rule that the complaint failed to confer jurisdiction upon the court over the City of Chicago. 367 F.Supp. at 482–484. In rejecting allegations of jurisdiction under 28 U.S.C. § 1343, the court relied on *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109. The district judge also ruled that there was no federal question jurisdiction over the City under 28 U.S.C. § 1331 because

"[t]his court cannot see that the equitable claim here against the City is so capable of evaluation in monetary terms as to satisfy the jurisdictional amount requirement * * *. It does not seem that plaintiffs have a proper basis on which to allege an amount in controversy as to the City exceeding the $10,000 jurisdictional minimum, individually, or in the aggregate, either ad damnum, or by way of injunctive relief." 367 F.Supp. at 484.

Finally, the court refused to exercise pendent jurisdiction. 367 F.Supp. at 483.

At defendants' request, the district court dismissed the three plaintiff organizations as parties.[6] The court also dis-

---

**4.** The term "official defendants" refers to the defendants within the Department's hierarchy, the Superintendent and Police Board members, rather than the individual policeman defendants.

**5.** *Calvin v. Conlisk*, 367 F.Supp. 476 (N.D.Ill. 1973).

**6.** It is not clear upon what the district court relied in dismissing the organizational plaintiffs. The district court stated:

"Defendants in their motions to dismiss have asked the courts to dismiss plaintiffs Afro-American Patrolmen's League, Concerned Citizens for Police Reform and Chicago Urban League as parties plaintiff upon the ground that they lack standing to join in this suit. The court in its reconsideration is of the opinion that they should be dismissed.

They do not plead specific injury from alleged acts of misconduct as do the individual plaintiffs. They allege a common concern for an improved disciplinary system within the Chicago Police Department and state they have received hundreds of complaints of police misconduct. They claim they have a sufficient stake in the controversy to obtain judicial resolution of it. *But the judicial resolution they seek is through this court's intervention to review and continue judicial surveillance and that is not a justiciable controversy.* * * * The organization plaintiffs are not necessary parties here to protect the rights of the individual plaintiffs in their suits for damages against the individual policemen. The individual plaintiffs are legally competent and are represented by well-qualified and competent counsel." (Emphasis added, 367 F.Supp. at 485.)

missed the 25 John Doe defendants for lack of jurisdiction because they had not been served and no appearance was entered for them.[7] 367 F.Supp. at 486. The court refused to grant plaintiffs' motion to dismiss the nine counterclaims of defendant policemen, and certified this interlocutory appeal pursuant to 28 U.S.C. § 1292(b). 367 F.Supp. at 486. Only the counterclaims and the seven individual damage actions remained in the case after the district court's November 8, 1973, decision.

*Justiciability of Police Discipline Issues*

Originally the district court denied defendants' motion to dismiss the complaint except insofar as damages were sought from the City. However, on July 10, 1973, the defendants requested the court to reconsider on the basis that the complaint failed to present justiciable claims under the just released decision in *Gilligan v. Morgan*, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407. As seen, the district court accepted this argument. We do not deem *Gilligan* to be controlling and therefore reverse.

In *Gilligan*, plaintiffs were students at Kent State University in Ohio. There the court of appeals thought equitable relief would be appropriate if there were a pattern of training in weaponry and orders of the Ohio National Guard favoring the use of fatal force to suppress civilian disorders where nonlethal force would suffice. *Morgan v. Rhodes*, 456 F.2d 608 (6th Cir. 1972). In a five-to-four opinion,[8] the Supreme Court held that no justiciable controversy was presented where the plaintiffs were call-

ing on judicial power to assume continuing regulatory jurisdiction over the activities of the Ohio National Guard. In conflict with Article I, Section 8, Clause 16 of the Constitution with respect to the militia, such injunctive relief would embrace "critical areas of responsibility vested by the Constitution in the Legislative and Executive Branches of the Government." 413 U.S. at 7, 93 S.Ct. at 2444. The Chief Justice's opinion for the Court observed that this type of governmental action was intended to be left to the political branches, directly responsible to the elective process. However, the Court concluded that its opinion should not be read to "hold nor imply that the conduct of the National Guard is always beyond judicial review or that there may not be accountability in a judicial forum for violations of law or for specific unlawful conduct by military personnel, whether by way of damages or injunctive relief." 413 U.S. at 11–12, 93 S.Ct. at 2447.

In *Gilligan*, the Court appeared to rely principally on the political question doctrine advanced by Judge Celebrezze in his dissent to the opinion of the Sixth Circuit. 413 U.S. at 7–12, 93 S.Ct. 2440. Traditionally, this doctrine has been invoked to restrain the entrance by the federal courts into areas which are assigned by the Constitution to the control of the Legislative and Executive Branches of the federal Government. See *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947. There is no provision of the Constitution analogous to Article I, Section 8, Clause 16 (relied upon in *Gilligan*), that would be applicable to this

Although much of the court's discussion is in terms familiar to conventional standing analysis, its decision to dismiss the organizational plaintiffs appears ultimately to have been based upon its earlier non-justiciability determination, which was made in light of the remedy sought and has no direct bearing on the standing of the organizational plaintiffs. However, since defendants properly raised the standing question both in the court below and on appeal and since both sides have briefed the issue in this Court, we discuss it *infra*, despite the uncertainty of the basis for the district court's ruling.

7. Since appellants do not ask for the reversal of that portion of the district court's order dismissing the John Doe defendants, we do not consider the propriety of that ruling. But see *Schnell v. City of Chicago*, 407 F.2d 1084, 1086 (7th Cir. 1969).

8. Four of the members of the Court dissented on the grounds that new "use of force" rules adopted by the Ohio National Guard and other changes in circumstances had rendered the case moot. 413 U.S. at 12, 93 S.Ct. 2440. Consequently, we do not have the views of the dissenters on the justiciability question.

case, which involves an area within the control of a municipal agency, rather than a co-equal branch of the federal Government. Furthermore, the cases have noted a strong reluctance of federal courts to issue injunctions of the type sought here, unless based upon a continuing course of conduct, rather than a single incident or isolated series of incidents. See *Allee v. Medrano*, 416 U.S. 802, 815–816, 94 S.Ct. 2191, 40 L.Ed.2d 566, and cases cited therein, especially note 9. *Gilligan* stemmed from a single incident of the Ohio National Guard's use of force, while plaintiffs here allege a persistent course of unconstitutional police conduct apparently extending over a period of years.

Less than a year after *Gilligan* was decided and some six months after the district court rendered its memorandum opinion in this case, the Supreme Court decided *Allee v. Medrano, supra*. Like the instant case, plaintiffs there sought injunctive relief against the police under the Civil Rights Act. The Court held the district court's injunction against intimidation of the plaintiffs to be appropriate, stating that where "there is a persistent pattern of police misconduct, injunctive relief is appropriate." 416 U.S. at 815, 94 S.Ct. at 2200, citing *Hague v. Committee for Industrial Organization*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423. Chief Justice Berger, the author of *Gilligan*, dissented in *Allee* and, while not actually reaching the

merits of the injunction issue, indicated that he would have reversed if the merits were properly before the Court. 416 U.S. at 848, 94 S.Ct. 2191. However, the Chief Justice's dissent makes it clear that in his opinion injunctions may be addressed to the police in serious cases, provided the utmost care is taken to avoid unnecessary intrusions into police affairs. 416 U.S. at 838, 859–860, 94 S.Ct. 2191. Furthermore, even the dissent fails to cite *Gilligan*, so that the entire Court obviously considered that National Guard case not to be controlling in a police misconduct situation. In accord with the *Allee* rule, various courts of appeals have approved injunctive relief where warranted by a pattern of police misconduct. *Goode v. Rizzo*, 506 F.2d 542 (3d Cir. 1974), certiorari granted, 420 U.S. 1003, 95 S.Ct. 1443, 43 L.Ed.2d 760;[9] *Build of Buffalo, Inc. v. Sedita*, 441 F.2d 284 (2d Cir. 1971);[10] *Schnell v. City of Chicago*, 407 F.2d 1084 (7th Cir. 1969); *Lankford v. Gelston*, 364 F.2d 197 (4th Cir. 1966) (en banc).[11]

To hold that suits seeking injunctions against police are non-justiciable would erect a permanent bar to relief, no matter how egregious and persistent the violations of the constitutional rights of citizens.[12] Such a bar would not be wise public policy, especially where less absolute restrictions will serve to protect the police from undue court interference. Unnecessary interference with the daily operations of the

---

**9.** For a similar Third Circuit decision, see *Lewis v. Kugler*, 446 F.2d 1343, 1350–1352 (3d Cir. 1971); see also cases cited in Comment, The Federal Injunction as a Remedy for Unconstitutional Police Conduct, 78 Yale L.J. 143, 146, n. 17 (1968).

**10.** In this case the Second Circuit stated the following about a suit very much like the instant one:

"The question of the propriety of remedies prayed for by plaintiffs, however, is not the issue on this appeal. The question here is whether plaintiffs might conceivably have some remedy, whether or not suggested by them, and on the face of this complaint we cannot say 'to a certainty' that they will not be able to make out a case against [the Buffalo mayor and police chief] calling for at

least part of the equitable relief they request, or some other appropriate relief." 441 F.2d at 288.

**11.** *Lankford* was cited with approval in *Allee v. Medrano, supra*, 416 U.S. at 816, n. 9, 94 S.Ct. 2191.

**12.** The facts leading to the injunction in *Lankford*, which were sufficient to persuade even the *Allee* dissenters that an injunction was proper in that case (416 U.S. at 859, 94 S.Ct. 2191), provide reason to prevent the imposition of an absolute bar to injunctions against police. In *Lankford*, 300 ghetto houses were searched in a 20-day period almost exclusively on the basis of anonymous tips and, therefore, without probable cause pursuant to police procedures approved by high police officials.

police can be avoided by the refusal of federal courts to issue injunctions except where clearly necessary to prevent persistent and serious violations of constitutional rights and by drawing as narrowly as possible those injunctions which are required. As the preceding discussion indicates, both the case law and public policy call for a reversal of the district court's non-justiciability ruling in this case.

While holding that plaintiffs' claim for equitable relief is justiciable, we cannot intelligently pass on the type of decree that should be entered in the absence of a trial. Assuming that plaintiffs can prove their allegations, they will be entitled to appropriate relief.[13] We are confident that the district court will not interfere unnecessarily with the running of the Police Department but will, if required by the proof at trial, enter as narrow a decree as possible to prevent violation of constitutional rights. In this respect,

"The court ought to avoid unnecessarily dampening the vigor of a police department by becoming too deeply involved in the department's daily operations. At the same time, the court should not shrink from making constitutional guarantees effective. * * * The court might also require specific changes in the departmental disciplinary machinery to make punishment a more concrete threat to erring policemen." Comment, The Federal Injunction as a Remedy for Unconstitutional Police Conduct, *supra*, at 149, 150.

■■■ Assuming that plaintiffs can prove the bulk of their allegations and thereby become entitled to appropriate relief, this relief need not necessarily be an injunction against the police. Mandatory affirmative injunctions are extraordinary remedies and the plaintiffs must demonstrate that they are entitled to such a remedy by satisfying the traditional criteria for the issuance of mandatory relief. For example, plaintiffs must show the inadequacy of the various actions at law that are available to protect constitutional rights and they must show the irreparable harm that will occur if the injunction is not issued. These hurdles, in addition to those already discussed, serve to safeguard the police from unnecessary federal court interference.

Doubtless, any decree that might be entered will take into account any changes in the police disciplinary system inaugurated since the filing of this lawsuit. Thus at the oral argument, we were advised that independent civilians now look into complaints of police misconduct. Instead of requiring defendants to report ameliorative steps at 3-month intervals for three years, as prayed by plaintiffs, the district court might well find it necessary only to retain jurisdiction to assure compliance with its orders. Without interfering with police discretion in their normal routines, the district court could, if appropriate, formulate relief that would establish procedures to assure proper processing of citizen complaints concerning police misconduct. Thus such a decree should be designed to stop deprivations of constitutional rights without unnecessary encroachment upon local government functions. In sum, if liability is established at trial, the framing of equitable relief will be a delicate and difficult process, doubtless differing from the provisions requested by plaintiffs. See Comment, The Federal Injunction as a Remedy for Unconstitutional Police Conduct, *supra*. Plaintiffs would be well advised to be conservative in any decretal proposals.

---

13. In *Peek v. Mitchell*, 419 F.2d 575, 579 (6th Cir. 1970), on which defendants rely, the Sixth Circuit based its affirmance of the district court's dismissal on plaintiffs' failure to make more than conclusory allegations in their complaint. The court did acknowledge that equitable relief would be appropriate where government officials "have notice of the unconstitutional conduct of their subordinates and fail to prevent a recurrence of such misconduct," quoting approvingly from *Schnell v. City of Chicago, supra.*

*Jurisdiction Over the City of Chicago*

The district judge foresaw the possibility that this Court would reverse his non-justiciability determination and therefore decided the City of Chicago's ("City") motion to dismiss it as a party defendant for lack of jurisdiction. Plaintiffs contended below, as they do on appeal, that jurisdiction over the City is supportable under 28 U.S.C. § 1331, 28 U.S.C. § 1343(3), or through pendent jurisdiction.[14] The district court ruled that plaintiffs had not established jurisdiction over the City and also refused to exercise pendent jurisdiction.[15] 367 F.Supp. at 482–484.

In *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109, municipalities were held to be beyond the scope of 42 U.S.C. § 1983 for purposes of equitable as well as monetary relief. See *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492. However, the *Bruno* case was remanded to determine whether the jurisdictional amount under 28 U.S.C. § 1331 had been met, thus indicating jurisdiction over a city could be established under that provision. 412 U.S. at 514, 93 S.Ct. 2222; see also 412 U.S. at 516, 93 S.Ct. 2222 (concurring opinion of Justices Brennan and Marshall).[16]

Since the plaintiffs have not pressed a damage claim against the City in this Court, their assertion of jurisdiction under Section 1331 must fail unless their injunction claim is found to put into controversy an amount greater than $10,000. See 28 U.S.C. § 1331. The district court, relying on our decision in *Giancana v. Johnson*, 335 F.2d 366 (7th Cir. 1964),

certiorari denied, 379 U.S. 1001, 85 S.Ct. 718, 13 L.Ed.2d 702, held that plaintiffs' complaint failed to establish that the amount in controversy exceeded the requisite $10,000. 367 F.Supp. at 482–484.

The question of the monetary worth, for purposes of establishing the jurisdictional amount under Section 1331, of an action seeking an injunction against allegedly unconstitutional conduct is much discussed in the cases and among the commentators.[17] This Circuit, in the *Giancana* case, was among the first to announce a position. The Court there stated:

"Courts may not treat as a mere technicality the jurisdictional amount essential to the 'federal question' jurisdiction, even in this case where there is an allegedly unwarranted invasion of plaintiff's privacy. The showing of that essential is not a mere matter of form, but is a necessary element.

\*     \*     \*     \*     \*     \*

Here the complaint makes no express allegation of the essential jurisdictional sum or value. Plaintiff argues, however, that the jurisdictional sum or value should be inferred from the allegations, supported by unimpeached affidavits. But there are no facts from which that necessary element can be inferred. If, as plaintiff contends, the sum or value cannot be alleged because of the priceless rights involved, how can this court infer that essential element? And there is no finding of the essential sum or value and no evidence on which to base a finding.

\*     \*     \*     \*     \*     \*

---

14. Plaintiffs originally sought to secure jurisdiction over the City under 42 U.S.C. § 1983 in conjunction with 28 U.S.C. § 1343. After the decision in *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109, it was clear that jurisdiction under Section 1983 would not lie. Plaintiffs therefore twice amended their complaint to add Section 1331 and an allegation of the jurisdictional amount as to each plaintiff. See 367 F.Supp. at 482.

15. An earlier ruling by the trial court which struck from the complaint plaintiffs' request for damages from the City has not been appealed.

16. See also *Gautreaux v. Romney*, 448 F.2d 731, 734 (7th Cir. 1971).

17. For a thorough review of the cases and commentary on this issue, see *Gomez v. Wilson*, 155 U.S.App.D.C. 242, 477 F.2d 411, 419–421 (1973), especially n. 56. Two cases not discussed in *Gomez* are *McGaw v. Farrow*, 472 F.2d 952 (4th Cir. 1973), and *Burnett v. Tolson*, 474 F.2d 877 (4th Cir. 1973).

[I]t is no answer to failure to bring his claim within the jurisdictional prerequisite that the value is inestimable.

\*   \*   \*   \*   \*   \*

[P]laintiff failed to allege, or otherwise show, his damage accordingly, or to allege, or otherwise show facts from which that essential jurisdictional element may be inferred." 335 F.2d at 368–369.

The vitality of Giancana in this Circuit is called into question by the decision in Gautreaux v. Romney, supra. There we indicated our agreement with the district court's determination (No. 66 C 1460, 9/1/70, N.D.Ill.) that Count I of the complaint sufficiently alleged the jurisdictional amount. 448 F.2d at 735, n. 6. The complaint in Gautreaux sought declaratory and injunctive relief against the Secretary of Housing and Urban Development to prevent federal aid to the Chicago Housing Authority because of the Authority's alleged racially discriminatory application of the funds. The constitutional right sought to be protected there was, as here, difficult to price for jurisdictional purposes. In finding the plaintiffs' allegation sufficient, the district court had stated:

> "The rule governing dismissal for want of jurisdictional amount is that, unless the law gives a different rule, the sum claimed by the plaintiff in good faith at the time of filing controls. 1 Moore's Fed.Prac. ¶ 0.91, pp. 825–828. Cf. Giancana v. Johnson, 335 F.2d 366 (7th Cir. 1964) cert. den. 379 U.S. 1001 [85 S.Ct. 718, 13 L.Ed.2d 702]. A monetary value is difficult to assess in cases where the violation of fundamental constitutional rights is alleged, and it does not appear that the allegation is not made in good faith."

■■■ The affirmance by this Court can be seen as a departure from the "tough" approach to the valuation of constitutional rights taken in Giancana.

It should also be noted that the plaintiff in Giancana failed to allege even generally an amount in controversy, so that the Gautreaux panel could have viewed Giancana as confined to its facts. As the discussion below indicates, we need not reconcile the two cases in order to support our holding that the complaint herein satisfies the jurisdictional amount requirement, thus conferring jurisdiction over the City upon the district court.

Plaintiffs' complaint asserts seven instances of police misconduct of the type that they seek to prevent through this suit. In each, the plaintiffs assert that the unconstitutional acts of the police resulted in physical injury requiring medical treatment. While plaintiffs list the dollar value of some of the elements of damages, these claims are not exclusive, so that the suits are essentially unliquidated damage claims apparently involving pain and suffering, as well as other intangibles. Some complain of false imprisonment, Fourth Amendment violations, lost wages or legal fees, incurred as a result of the misconduct. Given the liberal standards by which courts judge assertions of the jurisdictional amount,[18] and the assertion in the complaint as to each plaintiff that in excess of $10,000 is in controversy, the district court could not have properly ruled these allegations insufficient as to jurisdictional amount had the plaintiffs pressed their damage claims against the City under Section 1331. See n. 15, supra; cf. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939, and Bivens v. Six Unknown and Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619. Since the complaint alleges that the plight of the seven named plaintiffs is exemplary of the type of invasion of constitutional rights that the relief sought here seeks to prevent, it follows that the constitutional rights which the plaintiffs allege would be protected by the success of this suit have been satisfactorily shown to be worth $10,000. Thus this case differs

---

18. The test is one of "good faith." See St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–289, 58 S.Ct. 586, 82 L.Ed. 845; Bell v. Preferred Life Assurance Society, 320 U.S. 238, 243, 64 S.Ct. 5, 88 L.Ed. 15.

from *Giancana* where there was neither an allegation as to the amount in controversy nor allegations of facts from which the Court could reasonably infer that the rights which plaintiff sought to protect were worth more than $10,000. Accordingly, we reverse the district court on this issue.[19]

*Dismissal of Plaintiff Organizations*

The district court dismissed the three plaintiff organizations from the suit, apparently on the erroneous ground that there was not a justiciable controversy.[20] On appeal, defendants urge that the organizations have no standing, citing *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674. We first examine the contact with this suit that the organizational plaintiffs allege in the complaint.

All three of the organizational plaintiffs operate services that receive complaints from persons aggrieved by police misconduct and seek to obtain redress for these clients. The three organizations allege that they would be able to reduce their efforts in processing such complaints if defendants were required to fulfill their constitutional obligations. It is also alleged that, in one form or another, each of these plaintiffs has as a purpose of its organization the protection of its members and clients from unconstitutional police activity. Plaintiffs Concerned Citizens for Police Reform ("CCPR") and Chicago Urban League ("Urban League") allege that their members have been subject to the police mis-

conduct that this suit seeks to remedy in the past and continue to be in danger of such misconduct. Further, some of the named individual plaintiffs in this suit are alleged to be members of CCPR.

Standing is a concept with which the courts have long struggled. Such rules as do exist have been set forth in a series of Supreme Court opinions.[21] The allegations of CCPR and the Urban League satisfy the "injury in fact" to the organization or its members that was found absent in *Sierra Club v. Morton, supra.* In that case, the Court recognized that an organization could assert the standing of its members, citing *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405.[22] This Circuit has recognized that an organization is especially well suited to represent its injured members when representation of the interests is, as here, a primary reason of the organization's existence. *United States v. Board of School Commissioners of Indianapolis*, 466 F.2d 573, 576–577 (7th Cir. 1972), certiorari denied, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271. Thus by reason of the injury to the organizations themselves, their clients and their members, CCPR and the Urban League have standing in this case.

The Afro-American Patrolmen's League ("AAPL"), however, is in a somewhat different position. While it has clients whose rights would be protected by a victory in this suit and one of its stated purposes is alleged to be "to preserve and protect the rights of residents of Chicago against abusive and ar-

**19.** Because of our decision that the district court has jurisdiction over the claims against the City under 28 U.S.C. § 1331, it is unnecessary to consider plaintiffs' additional arguments that there is also jurisdiction over the City under 28 U.S.C. § 1343(3) and under the doctrine of pendent jurisdiction.

**20.** See n. 6, *supra.*

**21.** See, *e. g., Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663; *Flast v. Cohen*, 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947; *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636; *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254.

**22.** Relying upon some of these same Supreme Court decisions, a district court recently held:
"[B]oth organizations are specifically and actively concerned with the location and provision of low income housing in the County. Among the officers or members or clients of both organizations are persons who have sought or who are seeking this housing in the County. The allegations of the complaint go right to the heart of the work, not merely the interest, of these organizations and the rights of persons associated with them. Therefore, they both have standing to sue." *Planning for People Coalition v. County of DuPage*, (No. 71 C 587, 9/21/72, N.D.Ill.).

bitrary police conduct," its members are also members of the Chicago Police Department, the very persons whom this suit seeks to restrain from certain conduct. Assuming that any remedy is ever issued as a result of this suit, the members of the AAPL would likely be directly affected. The increased vigor in disciplinary proceedings against police misconduct, which this suit seeks to initiate, could result in AAPL members who now escape disciplinary sanctions becoming subject thereto. A clear potential conflict of interest exists so long as we assume, as we do, that AAPL members, as well as other policemen could be adversely affected under a remedy entered at some future time in this suit. This should not be taken to mean that this Court has any reason to suspect AAPL members of unconstitutional conduct; rather our ruling stems from the fact that the remedy sought in the complaint may directly affect members of the AAPL, thus creating an apparent conflict of interest. The AAPL was therefore properly dismissed as a plaintiff.

### Dismissal of Counterclaims

 As noted in the opinion below, plaintiffs moved to dismiss the counterclaims of nine police officers. These police officers have admitted that they entered into agreements with the Corporation Counsel of the City of Chicago providing for the officers to turn over to the City any monies obtained through judgments on the counterclaims. Apparently they have not assigned their interests to the City. Therefore, they are still real parties in interest under Rule 17(a) of the Federal Rules of Civil Procedure. See 3A Moore's Federal Practice, ¶ 17.08 at p. 262; ¶ 17.09[1.-1], ¶ 17.13[1]. The district court correctly permitted the counterclaimants to proceed.

The order of the district court is affirmed insofar as it denied the motion to dismiss the counterclaims, insofar as it dismissed all John Doe defendants, and insofar as it dismissed the AAPL as a plaintiff. In its other respects the order is reversed and the cause is remanded for further proceedings not inconsistent herewith, with costs to plaintiffs.