Chester **JENNINGS**, Plaintiff,

**Leonard Barnes and Eunice G. Farrington, etc., Plaintiffs-Appellants,**

v.

Donald **PATTERSON** et al.,
**Defendants-Appellees.**

No. 73-1541
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1974.

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

**438**

Fletcher N. Farrington, Jr., Savannah, Ga., for plaintiffs-appellants.

Michael I. Kent, Opelika, Ala., for Patterson and Dennis.

Charles R. Adair, Jr., Dadeville, Ala., for City of Dadeville, and others.

Before THORNBERRY, GOLDBERG and RONEY, Circuit Judges.

RONEY, Circuit Judge:

In this civil rights action plaintiffs allege violation of 42 U.S.C.A. §§ 1981, 1982, 1983, and 1985 in that they were denied access to a public street by a barricade erected by defendants Donald Patterson and Horace Dennis ("the private defendants"), which defendants City of Dadeville, Alabama and its governing officers ("the City") failed to remove. Plaintiffs seek declaratory and injunctive relief.

At an earlier stage in the proceedings, this Court held that the complaint states cognizable statutory claims. Jennings v. Patterson, 460 F.2d 1021 (5th Cir. 1972). On remand the case was tried to a jury.[1] In response to special interrogatories the jury found that the public had acquired a prescriptive right to use the street, that the private defendants had dedicated the street to public use, that this dedication had been accepted by the City, that the defendants had knowingly deprived the plaintiffs of their right to use the street, but that this action was not taken under color of state law. The trial court then granted defendants judgment n. o. v., *sua sponte*, on the ground that the evidence was insufficient to support the jury findings on prescription and dedication. The Court also noted that the jury determination on state action should have precluded relief. We conclude that the District Court should not have set aside the jury findings of prescription and dedication. In addition, we hold that there was state action within the meaning of Section 1983, an issue of law which should never have been submitted to the jury.

In the early 1940's, Will Patterson and Fletcher Farrington were adjoining owners of land now within the city limits of Dadeville. Their property was separated by a north-south section line fence. On the Patterson land a road, beginning in the west at Oak Street, extended eastward at least as far as the section line. This road, called Patterson Street, was paved only for about one half of its length, beginning at Oak Street. As portions of the Patterson land were sold off and developed, the paving was extended in segments—to include each new house as it was constructed—until it reached the driveway

---

1. Originally, the defendants demanded trial by jury. On appeal, however, they contend that the jury was only advisory. Although the trial judge nowhere in the record specifically stated that the jury was one of right, his every action indicates that he treated it as such. Having at trial demanded and received a jury as of right, the defendants will not be heard on appeal to complain either that the grant of jury trial was error or that the jury itself was less than full-fledged. *Cf.* Law v. United States, 266 U.S. 494, 496, 45 S.Ct. 175,

69 L.Ed. 401 (1925). Accordingly, we need not decide whether the grant of jury trial was appropriate in this case. *See generally,* Ross v. Bernhard, 396 U.S. 531, 538, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970) ; Dairy Queen, Inc. v. Wood, 369 U.S. 469, 479, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) ; Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 504, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) ; Whitehead v. Shattuck, 138 U.S. 146, 151, 11 S.Ct. 276, 34 L. Ed. 873 (1891) ; United States v. Williams, 441 F.2d 637, 643, 644 (5th Cir. 1971).

of defendant Dennis, owner of the last lot in the tract, approximately 40 feet west of the section line.

In 1969, plaintiff Eunice Farrington (Fletcher's widow) improved a continuation of the street east of the section line in the course of subdividing a portion of her tract. Thereafter, the City improved and maintained the street system of the newly developed Farrington tract. All lots except the one closest to the section line were sold to blacks. This lot was purchased by James Shaddix, a white.

In 1971, the private defendants constructed a barricade across Patterson Street at the section line, preventing residents of the Farrington tract from using the western portion of the street. Without this access, one and a half to two miles are added to the journey to town. Only James Shaddix, the sole white resident, was offered an easement permitting access to the street.

PATTERSON STREET AND

VICINITY - 1971

The defendants, both private and public, contend that the District Judge correctly set aside the jury's findings on prescription and dedication. Under their view of the evidence, the unpaved strip of the street between the Dennis driveway and the section line remains private property. The private defendants, therefore, claim a right to erect the fence. The City maintains that it is without power to remove the fence from private property.

## I.

The defendants filed no motion for judgment n. o. v. In the absence of a timely motion, normally a district court may not grant judgment notwithstanding the verdict. Johnson v. New York, N.H. & H. R.R., 344 U.S. 48, 50, 73 S.Ct. 125, 97 L.Ed. 77 (1952); see F.R.Civ.P. 50(b). In any event, there is ample evidence from which the jury could have found as it did—despite significant evidence supporting defendants' contentions.

The plaintiffs introduced four Patterson deeds using the intersection of the north side of Patterson Street with the section line as a corner point. A fifth deed also referred to the intersection, and further identified Patterson Street as "also known as Pole Cat Springs Road." Plaintiffs also introduced testimony that, in the 1940's, Patterson Street continued eastward from the section line to Polecat Springs, a watering hole located on the Farrington tract that was noted for its mineral waters. This testimony indicated that, at the time, the public traveled the road to reach the Springs and that automobiles had used the road. Although defendants presented evidence that Patterson Street was blocked at the section line by a fence meant to keep cattle on the Farrington side of the line, some witnesses for the plaintiffs testified that there was either a gate or a cattle gap at that point.

The City's practice of paving the street in sections as new houses were built could have been seen by the jury as the only reason the strip now in question remained unpaved. Similarly, the jury could have discounted the absence of formal dedication of the disputed strip in view of testimony that the City had paved the earlier segments without formal dedication. (The defendants conceded that the paved portions of Patterson Street are public.) Further, the private defendants did not attempt to have the City Council close the street and did not subsequently resort to self-help until a year and a half after the Patterson Street extension on the Farrington tract had been paved and use of the disputed strip by the new residents of the Farrington tract had begun. The jury could have inferred that this delay stemmed from an earlier intent to dedicate the unpaved portion to public use or from a recognition of the public character of the strip. Evidence that the City maintained the extension and erected a street sign designating the extension as Patterson Street is also consistent with the jury's findings that the street was public.

Where there is substantial evidence "of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions" a motion for judgment notwithstanding the verdict should be denied. Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc). Accordingly, the jury's special findings on prescription and dedication must be reinstated.

## II.

We next come to the issue of state action under 42 U.S.C.A. § 1983.[2]

2.  42 U.S.C.A. § 1983:
    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Judge charged the jury on "color of state law" in a manner that restricted the jury's consideration of the question solely to the actions of the private defendants in closing the street. The plaintiffs, however, did not assert state action in the closing of the street. Under their theory, state action was to be found in the City's failure to remove the barricade.

It is abundantly clear that one reason the legislation was passed was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies.

Monroe v. Pape, 365 U.S. 167, 180, 81 S.Ct. 473, 480, 5 L.Ed.2d 492 (1961). Accordingly, we hold that the failure of the City and its governing officials to dismantle the fence constitutes state action proscribed by Section 1983.

Although it establishes state action in this case, *Monroe* raises a jurisdiction issue which neither the trial court nor the parties to this appeal have addressed. In addition to expanding the definition of state action, that case restricted the coverage of Section 1983 by holding that municipal corporations could not be held liable for damages thereunder. 365 U.S. 187–192, 81 S.Ct. 473, 5 L.Ed.2d 492. This principle was recently reaffirmed in Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

Shortly after *Moor*, the Supreme Court, in City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L. Ed.2d 109 (1973), eliminated all doubt [3] that municipal corporations are also immune from injunctive relief under Section 1983. We must, therefore, modify our earlier conclusion, in Jennings v. Patterson, *supra*, that plaintiffs stated a claim for relief against the City of Dadeville.[4] We remand for consideration by the District Court as to whether, in light of *Kenosha*, mandatory injunctive relief against the city's officials, requiring them to set in motion the city's machinery of government, is proper. *See* Campbell v. Masur, 486 F.2d 554 (5th Cir. 1973).

### III.

The plaintiffs' other civil rights claims received short shrift. The trial judge ruled that 42 U.S.C.A. §§ 1981 and 1982 had not been violated,[5] stating that there had been

no proof in this cause of any discrimination in the blocking of the Street by

---

3. *See, e. g.,* Harkless v. Sweeny Indep. School Dist., 427 F.2d 319 (5th Cir. 1970), cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971) ; Garren v. City of Winston-Salem, 439 F.2d 140 (4th Cir. 1971), vacated on other grounds, 405 U.S. 1052, 92 S.Ct. 1489, 31 L.Ed.2d 787 (1972) : Schnell v. City of Chicago, 407 F.2d 1084 (7th Cir. 1969) ; Adams v. City of Park Ridge, 293 F.2d 585 (7th Cir. 1961).

4. Rather than invite reversal by insisting on our law of the case, we should apply the law as it now exists. *See* 1B Moore's Federal Practice ¶ 404 [10]. Although a federal appellate court will normally depart from a ruling established previously in the same case only in unusual· circumstances, an intervening change in the controlling law justifies the court's reversing itself. *See* Lumber-

men's Mutual Casualty Co. v. Wright, 322 F. 2d 759 (5th Cir. 1963).

5. 42 U.S.C.A. § 1981:
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
42 U.S.C.A. § 1982:
All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

the Pattersons. The white Plaintiff, Mrs. Farrington and the black Plaintiffs, Messrs. Jennings and Barnes, as well as others, were barred.

Yet it was shown at trial that, with one exception, all of the persons directly affected by the Pattersons' barricade were black. The only white person affected, Shaddix, was offered private access to the closed street. And the jury found that the defendants had knowingly deprived these persons of the right to use the street. Clearly, these persons, because they are black, have been denied the right to hold and enjoy their property on the same basis as white citizens. *See* Jones v. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 30 L.Ed.2d 1189 (1968).

■ The trial judge failed even to mention the plaintiffs' 42 U.S.C.A. § 1985(3) claim.[6] Yet the plaintiffs' evidence tended to prove that (1) some of the Patterson clan had erected the barricade after securing the approval of others; (2) the construction of the barricade was a deprivation of rights secured to them under 42 U.S.C.A. § 1982; (3) construction of the barricade was an act in furtherance of the conspiracy; and (4) denial of convenient access to downtown Dadeville was an injury to the plaintiffs' property. Such proof would meet the standards required to show a violation of 42 U.S.C.A. § 1985(3) as established by Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).[7]

On appeal, the plaintiffs also seek the award of attorney's fees for their prosecution of this civil rights action. This, however, is a matter in the first instance for the trial court and should be considered there on remand.

The decision of the trial court setting aside the jury verdict is reversed, the judgment of the trial court is vacated and the case remanded for reinstatement of the findings of fact made by the jury and further proceedings consistent with this opinion.

Reversed in part, vacated in part and remanded.

---

6. 42 U.S.C.A. § 1985(3):

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

7. To come within the legislation a complaint must allege that the defendants did (1) "conspire or go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States." Griffin v. Breckenridge, *supra*, 403 U.S. at 102–103, 91 S.Ct. at 1798, 1799.