CITIZENS COUNCIL ON HUMAN RELATIONS, Buffalo Chapter of the National Organization for the Advancement of Colored Persons, National Organization of Women, Norman Goldfarb, Gail Vance, Marie LaMarco, Frank Mesiah, Daniel Acker and Douglas Goggins, Jr., Plaintiffs,

v.

BUFFALO YACHT CLUB, Arthur D. Raszmann, Commodore, Hon. Stanley M. Makowski, Mayor, City of Buffalo, Leslie G. Foschio, Corporation Counsel, Gus Franczyk, Parks Commissioner, James F. Doherty, Councilman, Anthony M. Masiello, Councilman, Michael L. McCarthy, Councilman, Richard F. Okoniewski, Councilman, Gerald J. Whalen, Councilman, Harlan J. Swift, Jr., Councilman, George K. Arthur, Councilman, Shirley C. Stolarski, Councilman, Raymond Lewandowski, Councilman, Horace C. Johnson, Councilman, Angelo J. Fillippone, Councilman, John P. Reville, Jr., Councilman, Daniel J. Higgins, Councilman, William A. Price, Councilman, and City of Buffalo, Defendants.

No. Civ. 76–156.

United States District Court,
W. D. New York.

Oct. 7, 1977.

318

Carl A. Green, Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N.Y., for plaintiffs.

Terry D. Smith, Buffalo, N.Y., for defendants Buffalo Yacht Club & Arthur D. Raszmann, Commodore.

Leslie G. Foschio, Corp. Counsel, City of Buffalo, Buffalo, N.Y., for defendants Makowski, City of Buffalo, Foschio, Franczyk, Doherty, Masiello, McCarthy, Okoniewski, Whalen, Swift, Arthur, Stolarski, Lewandowski, Johnson, Fillippone, Reville, Higgins, Price.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

This is a civil rights action alleging violations of the Fourteenth Amendment to the Constitution of the United States and of various federal civil rights statutes. Plaintiffs are seven individuals and three organizations—namely, the Citizens Council on Human Relations ("CCHR"), the Buffalo Chapter of the National Association for the

Advancement of Colored Persons ("NAACP") and the National Organization of Women ("NOW"). They allege discrimination based upon race, religion and sex. Defendants include the Buffalo Yacht Club ("the Club"), its Commodore, the City of Buffalo ("Buffalo") and the city's Mayor, Corporation Counsel, Parks Commissioner and 14 members of its Common Council. The case is now before me on defendants' motions pursuant to Fed.R.Civ.P. rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted.

The Club, a private membership club, is housed in a privately-owned building which, however, is located on land owned by Buffalo and is adjacent to other public lands which are devoted to park purposes. Buffalo, pursuant to a resolution passed by its Common Council March 31, 1950, had approved a renewal agreement leasing the land on which the clubhouse sits to the Club for thirty years at the annual rate of one dollar, which renewal term commenced July 27, 1953. The original lease had been in effect since 1923. The agreement grants to the Club the exclusive use and sole possession of the public land thus leased. It is alleged that the rental fee is grossly inadequate and represents a substantial financial contribution and subsidy by Buffalo to the Club.

Under the terms of the renewal lease, the Club is required to permit public access to the surrounding park land, including moorings and docks, pursuant to rules and regulations which were to have been established by the Club and approved by the Parks Commissioner. No such rules or regulations have yet been established or approved. In addition, the maintenance of the clubhouse is under the general supervision of said Commissioner. Pursuant to this agreement, Buffalo receives certain benefits, including the development and care of public park land, insurance protection purchased by the Club, promises of indemnification for all claims and damages relating to the use of the park land leased to the Club, increased city taxes and sewer and water revenues on any improvements made to the leased parcel.

The Club has facilities to serve food and alcoholic beverages and possesses a restaurant license granted to it by Buffalo and a New York State liquor license. The Club opens its premises to parties and dinners for public functions and serves food and alcoholic beverages to those who attend such affairs, including non-members.

The by-laws of the Club provide that an applicant for membership must be sponsored by two members. After the applicant has secured such sponsorship, the Club's Board of Directors votes by secret ballot whether or not to approve the application. The adverse vote of any two members of the Board results in rejection of the particular application.

Plaintiff Goggins, a black person, expressed an interest in joining the Club and was invited to discuss the prospects of membership with members of the Club. After being informed of the admissions procedure, Goggins refrained from submitting an application for membership, allegedly in order to avoid the embarrassment of having his application rejected because of his race. It is alleged that he has been denied the full and equal enjoyment of the Club's facilities because of racial discrimination. It is further alleged that plaintiffs Acker and Mesiah (each of whom is a black person), along with CCHR and NAACP, are embarrassed and harmed by the alleged racial discrimination which has been perpetuated by the Club's sponsorship method of gaining membership. The Club has one non-resident black member.

The female plaintiffs, Vance and LaMarco, requested applications for membership and were informed by the Club that applications would not be sent to them until each had been sponsored by two of the present members. The Club's by-laws provide that membership is restricted to men and no woman has ever been sponsored or approved for membership. The Club has not yet forwarded applications to said female plaintiffs. It is alleged that Vance and LaMarco are thereby denied the full and equal enjoyment of the services, facilities,

privileges and advantages of the Club because of sex discrimination and that CCHR and NOW are embarrassed and harmed by this alleged sex discrimination.

During 1973, CCHR filed a complaint with Buffalo's Commission on Human Relations alleging that three Jewish individuals, who are not plaintiffs in the present case, had been denied membership by the Club because of their religious beliefs. In June of 1974, the Commission found probable cause that these individuals had been discriminated against because of their religious faith. Subsequent to said finding, the public defendants refused the request of plaintiffs CCHR, Goldfarb and Mesiah to terminate the lease between Buffalo and the Club. It is alleged that Jewish plaintiffs Goldfarb and Glickman and CCHR are embarrassed and harmed by this alleged religious discrimination. Some Jewish applicants have been approved for membership by the Club.

Each individual plaintiff believes that the filing of an application for membership would be a futile gesture in light of the Club's by-laws, sponsorship system and the past and present membership composition. Goggins and Acker are members of NAACP and Goldfarb and Mesiah are members of both CCHR and NAACP. Glickman, Vance and LaMarco are not members of any of the organizational plaintiffs.

The threshold issue to be determined is whether any of the plaintiffs has standing to bring the instant action. The requirement of standing ensures that

" * * * the questions will be framed with the necessary specificity, that the issues will be contested with the necessary adverseness and that the litigation will be pursued with the necessary vigor to assure that the constitutional challenge will be made in a form traditionally thought to be capable of judicial resolution." *Flast v. Cohen*, 392 U.S. 83, 106, 88 S.Ct. 1942, 1955, 20 L.Ed.2d 947 (1968).

■ It is now settled that a plaintiff must satisfy a two-pronged test to establish standing. One must allege that he or she has suffered or will suffer an injury in fact, and must seek to protect an interest arguably within the zone of interest protected by the statute or statutes in question. *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). In the present case, the second criterion is clearly satisfied as the rights allegedly violated fall within the purview of federal civil rights legislation. Thus, the ultimate question of standing will focus on whether the plaintiffs have sufficiently alleged threatened or actual injuries.

■ The touchstone is the existence of an injury in fact. The alleged injury, however, cannot be remote, speculative or conjectural. *Golden v. Zwickler*, 394 U.S. 103, 109–110, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); *Evans v. Lynn*, 537 F.2d 571, 595 (2d Cir. 1976) (rehearing *en banc*), aff'g 376 F.Supp. 327 (S.D.N.Y.1974). The actual or threatened harm must be to a real and immediate interest in order to assure that the plaintiff has a direct stake in the outcome of the controversy. *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Such a personal stake in the result of the litigation is the gist of standing. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). A mere general interest in a problem is insufficient to confer standing. *Sierra Club v. Morton*, 405 U.S. 727, 739, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

■ For purposes of ruling on a motion to dismiss for lack of standing, this Court must accept as true all material allegations set forth in the complaint and in the amendments thereto and must construe such pleadings in favor of the plaintiffs. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Goggins expressed an interest in becoming a member of the Club but decided not to apply in order to avoid the embarrassment of being rejected because of his race. Goggins alleges that he is harmed and embarrassed by the Club's alleged racial discrimination and that he is denied the full and equal enjoy-

ment of its facilities because of his race. These bare allegations are insufficient to establish the requisite injury in fact or a personal stake in the outcome of the controversy to give Goggins the requisite standing. A mere interest in joining a private club does not confer standing to contest its alleged discriminatory membership policies. Cf., *Sierra Club v. Morton, supra.* The harm alleged by Goggins is remote and speculative. He contends, in essence, that he is harmed because, if he applied for membership, there was a possibility that he would be rejected because of racial discrimination. Furthermore, he has not alleged sufficient facts to show that securing sponsors and submitting an application would be pointless. *See, Solomon v. Miami Woman's Club,* 359 F.Supp. 41 (S.D.Fla.1973). Absent a showing that attempting to obtain sponsors and file an application would be futile, Goggins's failure at least to attempt to become a member of the club precludes finding that he has standing to bring the instant action. *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972).

■ Acker, Mesiah, Goldfarb and Glickman make conclusory allegations that they are harmed and embarrassed by the Club's alleged racial and religious discrimination. Personal embarrassment alone is not sufficient to confer standing. Moreover, these plaintiffs do not allege any interest in joining the Club and do not allege any facts to show how they are personally harmed by the alleged racial discrimination. The amended complaint merely alleges that Goldfarb and Mesiah requested that Buffalo terminate the lease with the Club. In order to establish standing, plaintiffs must allege specific, concrete facts demonstrating that the alleged discriminatory practices harm them, and that they would benefit in a tangible way from judicial intervention. *Warth v. Seldin,* 422 U.S. at 508, 95 S.Ct. 2197. None of these four plaintiffs alleges any demonstrable, particularized injury. The conclusory allegation that each has been denied full and equal use and enjoyment of the public park land is not supported in any way. They do not allege

that they attempted to use the public land nor do they allege any facts showing how their enjoyment of the land has been denied or curtailed. Therefore, Acker, Mesiah, Goldfarb and Glickman lack standing in the present action.

■ On the other hand, Vance and LaMarco have alleged sufficient facts to show that they are injured in fact and have personal stakes in the outcome of this case. Each requested an application for membership and was informed that she must each be sponsored by two present members of the Club before application forms would even be sent to them. The Club's by-laws state that women cannot become members. Since the Club's inception no woman has ever been sponsored, let alone approved, for membership. A somewhat analogous situation was presented in *Solomon v. Miami Woman's Club, supra.* Therein, two black women unsuccessfully attempted to obtain application forms to join a private club for women. They were informed that such forms could be obtained only from club members and that a list of members was unavailable. Testimony at trial had revealed that the articles of incorporation of the federation to which the club belonged restricted membership to white women. The court held that under these circumstances the completion of an application for membership was not essential to establish standing because further efforts to join would have been pointless. In the instant case, the attempt by said plaintiffs to obtain sponsors would have been futile in light of the Club's by-laws and its members' longstanding absolute adherence to the "males-only" policy announced therein. They need not have completed the application process and have been rejected before they have standing. They have alleged sufficient facts to show that the Club's sex discrimination injures a real and immediate interest which gives them direct stakes in this controversy. The harm alleged—i. e., the denial of the full use and enjoyment of the Club's facilities because of their sex—is neither remote nor conjectural in view of the total proscription against female mem-

bers and the sponsorship system of joining the Club.

The organizational plaintiffs contend that they are embarrassed and harmed by the race, sex and religious discrimination allegedly practiced by the Club. It is settled that an association may have standing to seek judicial relief from injury to itself and, in securing such relief, may assert the rights of its members, but only if the challenged discriminatory conduct adversely affects the associational ties of its membership. *Warth v. Seldin*, 422 U.S. at 511, 95 S.Ct. 2197; *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 458–460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Aguayo v. Richardson*, 473 F.2d 1090, 1098 (2d Cir. 1973). The plaintiff organizations have not alleged sufficient individualized harm to themselves or their members. *See, United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). They have not alleged any facts to support their conclusory allegation that they are harmed by the defendants' actions. A mere passing interest in a problem without the necessary factual allegations of concrete, particularized injury does not establish standing. *Sierra Club v. Morton*, 405 U.S. at 739, 92 S.Ct. 1361. Plaintiffs must allege a distinct and palpable injury to invoke judicial intervention. *Warth v. Seldin*, 422 U.S. at 501, 95 S.Ct. 2197. Embarrassment does not reach this requisite level of harm. Moreover, a liberal reading of the amended complaint does not reveal that the associational ties of their membership are in any way affected by the alleged discriminatory practices.

In addition, an association may have standing solely in a representative capacity. *National Motor Freight Assn. v. United States*, 372 U.S. 246, 83 S.Ct. 688, 9 L.Ed.2d 709 (1963). In order to possess such representational standing, however, an association must allege that at least one of its members is suffering sufficient immediate or threatened injury to satisfy the requirement of standing had such member brought the suit himself. *Warth v. Seldin*, 422 U.S. at 511, 95 S.Ct. 2197. In the instant action, the only individuals who have standing are Vance and LaMarco and they are not members of any of the plaintiff organizations. Therefore, these organizations do not have and may not assert standing to bring this action as representative of their respective members.

Purely private discriminatory conduct, although reprehensible, is not prohibited by the Fourteenth Amendment. *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). "It is State action of a particular character that is prohibited. Individual invasion of individual rights is not the subject-matter of the amendment." *Civil Rights Cases*, 109 U.S. 3, 11, 3 S.Ct. 18, 21, 27 L.Ed. 835 (1883). Where, as here, the discrimination is rooted in private conduct, the State must have significantly involved itself with the invidious discrimination before the constitutional proscription can apply. *Reitman v. Mulkey*, 387 U.S. 369, 380, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); *Moose Lodge No. 107 v. Irvis*, 407 U.S. at 173, 92 S.Ct. 1965. A mutually beneficial relationship between a city lessor and a private lessee may sufficiently involve the municipality to satisfy this standard. *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). In a recent case the court held that, where a city's *sole* nexus with a private yacht club was a lease of bay bottom land for a nominal rental, the discriminatory membership practices of the club did not constitute state action. *Golden v. Biscayne Bay Yacht Club*, 530 F.2d 16, 22 (5th Cir.) (*en banc*), cert. denied, 429 U.S. 872, 97 S.Ct. 186, 50 L.Ed.2d 152 (1976). In a similar case, it was held that the existence of a lease, *without more*, between a city and a private organization for women did not significantly involve a state in the club's private discriminatory conduct. *Solomon v. Miami Woman's Club, supra*, at 46. At first blush, these cases would seem to favor a determination in the present case that Buffalo did not significantly involve itself with the alleged private discrimination. Upon close examination, however, these cases are factually distinguishable from the one at hand. The Supreme Court has cautioned

that whether particular discriminatory conduct is private or amounts to state action can only be ascertained by sifting facts and weighing circumstances. *Burton v. Wilmington Parking Authority*, 365 U.S. at 722, 81 S.Ct. 856. In *Golden*, the court pointed out that the yacht club did not perform any public function. There was no evidence in the record that the City of Miami had been aware of any discrimination practiced by the club. The trial court did not find that the annual rental fee was grossly inadequate, constituted a subsidy, or represented a substantial financial contribution to the club's operation. The court stated that the club did not monopolize, or significantly interfere with, access to or use of the public waters of Biscayne Bay. The club never had had any membership requirements or restrictions contained in its by-laws or elsewhere related to race, religion or sex. The court noted that the clubhouse was located on privately-owned property and the lease only pertained to bay bottom land under the club's docks. In addition, the club's existence antedated the city's and the docks had been constructed by the club thirty years prior to the time the city first asserted ownership of the bay bottom land. In *Solomon*, the court noted that the private club did not possess a liquor or restaurant license. Furthermore, there was no evidence presented to the court that the City of Lakeland had exercised or retained any control or supervision over the leasehold.

 In contrast to these cases, the Buffalo Yacht Club was delegated the governmental function of regulating the public's access to the park land adjacent to the clubhouse. The Club agreed in the renewal lease to formulate rules and regulations to permit such access, subject to approval of the Parks Commissioner. The performance of a governmental function can in appropriate circumstances by itself amount to state action. *Evans v. Newton*, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). At a minimum, the public function assumed by the Club in the present case is a significant fact to be considered with the other allegations of municipal involvement in determining whether its alleged discriminatory practices amount to state action.

 Buffalo and its officials were apprised of the Club's alleged discriminatory practices. A finding of probable cause that the Club had engaged in religious discrimination had previously been made by Buffalo's Commission on Human Relations. Notwithstanding such notice, the public defendants refused to act upon the request to terminate the lease in question. Plaintiffs further contend that Buffalo and its governing officials have failed to enforce the terms of the lease which mandate public access to the park land. The failure of a city and its public officials to act constitutes state action when the municipality is under a duty to act and the inaction results in the deprivation of constitutional rights. *Jennings v. Patterson*, 488 F.2d 436, 441 (5th Cir. 1974). A motion to dismiss should not be granted unless it is clear that the plaintiffs could not prove any set of facts in support of their claim which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). It cannot be said at the present time that, based upon plaintiffs' amended complaint, the inaction of Buffalo and its officials does not constitute state action. They well could have been under a duty to act and their inaction could have resulted in a deprivation of plaintiffs' constitutional rights.

Plaintiffs allege that the yearly rental fee is grossly inadequate and in effect constitutes a substantial financial contribution and subsidy to the Club. Sufficient facts are set forth in the amended complaint which if proven would show that the market value of the leasehold should command considerably more rent than the "peppercorn" agreed to by Buffalo. Taking such allegations as true, Buffalo financially supports to a certain degree the Club's existence.

Plaintiffs contend, in contrast to *Golden*, that Buffalo's failure to enforce the terms of the lease and require open access to the

park surrounding the clubhouse has denied them full and equal use and enjoyment of this public land. The existence of a specific by-law prohibiting female members has been previously noted. In addition, the clubhouse is not situated on private property but is located on public land leased from the City. Defendants have not presented any allegations setting forth whether the Club pre-existed Buffalo or whether the public land was claimed by Buffalo and leased to the Club after the clubhouse was erected. Were this the situation, defendants assuredly would have brought such to my attention.

 Contrary to the facts in *Solomon*, the Buffalo Yacht Club possesses a City of Buffalo restaurant license and a New York State liquor license, caters parties and dinners to the general public and serves food and alcoholic beverages to those who attend such gatherings. In addition, the Parks Commissioner retains general supervisory responsibility for the maintenance of the clubhouse and must approve any rules established by the Club to assure public access to the surrounding land and docks. Of course, the possession of a restaurant or liquor license alone does not sufficiently implicate the State in private discriminatory conduct. *Moose Lodge No. 107 v. Irvis, supra.* Also, state regulation by itself does not transform private conduct into state action. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Possession of state licenses, however, may be considered in conjunction with the other allegations of state participation to determine whether such involvement in the invidious discrimination is significant. *Burton v. Wilmington Parking Authority, supra.*

Under the lease between Buffalo and the Club, substantial benefits flow in both directions. The Club leases prime lakefront property for a pittance and has ready access to public land and docks. Buffalo benefits by the development and care of public park land, insurance protection purchased by the Club, promises of indemnification relating to the leasehold, and increased taxes, sewer and water revenues. Whether these allegations of a mutually beneficial arrangement satisfy the symbiotic relationship test articulated in *Burton* and alone significantly involve the State in the Club's discriminatory conduct need not be determined on this motion. It is sufficient to cumulate the impact of such relationship along with the other allegations of participation by Buffalo to determine whether in the aggregate the state is significantly involved.

The lease in question bestows upon the Club the exclusive right to use the leased park land as a site for its clubhouse. The exclusive use of public property by discriminatory organizations has been held to constitute state action. *Gilmore v. City of Montgomery*, 417 U.S. 556, 94 S.Ct. 2416, 41 L.Ed.2d 304 (1974). Therein, the Supreme Court noted that, when a municipality makes property owned by it available for use by private organizations, the case is more like *Burton* than *Moose Lodge*. *Gilmore v. City of Montgomery, supra*, at 573, 94 S.Ct. 2416. In the instant case, the exclusive use of public property granted the Club by Buffalo pursuant to the lease lends additional support to a finding of significant state involvement. *See, Golden v. Biscayne Bay Yacht Club, supra*, at 32 (dissenting opinion).

In view of the foregoing, I hold that the amended complaint alleges sufficient facts to show that the City of Buffalo has significantly involved itself with the alleged discriminatory practices of the Buffalo Yacht Club and that its conduct amounts to state action. Plaintiffs Vance and LaMarco have stated a claim of sex discrimination under 42 U.S.C. § 1983 and this Court has jurisdiction pursuant to 28 U.S.C. § 1343(3). These plaintiffs may not premise their claim on 42 U.S.C. §§ 1981, 1982 or 2000a because those statutory provisions do not apply to sex discrimination.

 A municipality is not a "person" within the meaning of 42 U.S.C. § 1983 and thus cannot be held liable for damages thereunder. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Municipal corporations are also immune from in-

junctive relief under section 1983. *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). However, plaintiffs in their amended complaint allege that the defendants, including the City of Buffalo, have violated the Equal Protection Clause of the Fourteenth Amendment and seek to invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1331(a). They contend that the matter in controversy exceeds $10,000 exclusive of interest and costs in that the market value of the lakefront property, the value of using such land, the loss of revenue to the City of Buffalo because of the inadequate rental fee, and the value of the constitutional rights in question all independently satisfy the threshold dollar limit required for subject matter jurisdiction. Of course, subject matter jurisdiction cannot be waived, but it should be noted that defendants in their memoranda of law and at oral argument have not contested the requisite jurisdictional amount.

▆ In addition to this Court's jurisdiction pursuant to 28 U.S.C. § 1343(3), the same can be independently predicated upon 28 U.S.C. § 1331(a) in a civil rights action where the amount in controversy exceeds $10,000. *Gentile v. Wallen*, 562 F.2d 193 (2d Cir. 1977); *Calvin v. Conlisk*, 520 F.2d 1 (7th Cir. 1975); *Skehan v. Board of Trustees of Bloomsburg State College*, 501 F.2d 31 (3d Cir. 1974); *United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach*, 493 F.2d 799 (5th Cir. 1974); *Maybanks v. Ingraham*, 378 F.Supp. 913 (E.D. Pa.1974). Thus, jurisdiction exists over the City of Buffalo if the requisite jurisdictional amount is satisfied. A plaintiff's good faith claim as to the amount in controversy ordinarily controls for jurisdictional purposes. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Gresham v. City of Chicago*, 405 F.Supp. 410 (N.D.Ill.1975). It is here alleged that the monetary value of the infringed constitutional rights exceeds $10,000 as to each plaintiff. It is difficult to attribute a precise monetary evaluation to the violation of constitutional rights, but this alone will not defeat section 1331(a) jurisdiction. Such intangible rights are not incapable of valuation in monetary terms. *Spock v. David*, 502 F.2d 953, 956 (3d Cir. 1974).

▆ Where the denial of constitutional rights is at stake, the jurisdictional allegations of the complaint should be broadly construed. *Fifth Avenue Peace Parade Committee v. Hoover*, 327 F.Supp. 238, 241 (S.D.N.Y.1971). These rights hold a position of such high esteem in our society that their inherent value almost requires a conclusion that they are worth more than $10,000. *Cortright v. Resor*, 325 F.Supp. 797, 810 (E.D.N.Y.) *rev'd on other grounds*, 447 F.2d 245 (2d Cir. 1971), *cert. denied*, 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed.2d 240 (1972); *West End Neighborhood Corp. v. Stans*, 312 F.Supp. 1066, 1068 (D.D.C.1970). The basic allegation that constitutional rights were violated in an amount exceeding $10,000 satisfies the jurisdictional requirements of section 1331(a). *United States Servicemen's Fund v. Eastland*, 159 U.S.App.D.C. 352, 361, 488 F.2d 1252, 1261 (1973). Moreover, plaintiffs' allegations as to the amount in controversy do not appear to be made in bad faith or frivolous. Thus, jurisdiction is properly premised on 28 U.S.C. § 1331(a).

▆ Defendants argue that the members of the Common Council of the City of Buffalo enjoy absolute legislative immunity in this civil rights action, which seeks only equitable relief. The doctrine of legislative immunity is not available to city legislators when a suit seeks only injunctive and declaratory relief. *Ybarra v. City of Town of Los Altos Hills*, 503 F.2d 250, 253 (9th Cir. 1974); *Rowley v. McMillan*, 502 F.2d 1326, 1331 (4th Cir. 1974); *Smetanka v. Borough of Ambridge, Pennsylvania*, 378 F.Supp. 1366, 1373 (W.D.Pa.1974); *Shellburne, Inc. v. New Castle County*, 293 F.Supp. 237 (D.Del.1968). Legislators are cloaked with immunity only in damage actions brought pursuant to section 1983. *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).

It is therefore hereby

**326**

ORDERED that plaintiffs Vance and La-Marco have standing to bring the instant action and with respect to them defendants' motions to dismiss are denied and that defendants' motions to dismiss the claims of all other plaintiffs are granted.