675 F.2d 731
 Mary Hotard BECNEL, Plaintiff-Appellant,
v.
CITY STORES COMPANY (Maison Blanche Limited), D. H. Holmes,
Co., Ltd., Leon Godchaux Clothing Co., Ltd., Gus
Mayer Stores, Inc., J. C. Penney Co.,
Inc. and Sears, Roebuck & Co.,
Defendants-Appellees.
 No. 81-3594
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 May 14, 1982.
 Walter G. Cowan, Jr., Legal Dept., New Orleans, La., and Carol Noymer, J. C. Penney Co., Inc., Legal Dept., New York City, for J. C. Penney.
 
 
 1
 Chaffe, McCall, Phillips, Toler & Sarpy, G. Phillip Shuler, III, New Orleans, La., for D. H. Holmes Co., Ltd., and Sears Roebuck & Co.
 
 
 2
 Kullman, Lang, Inman & Bee, Howard S. Linzy, New Orleans, La., for City Stores Co. (Maison Blanche Ltd.).
 
 
 3
 Milling, Benson, Woodward, Hillyer, Pierson & Miller, Ralph J. Zatzkis, New Orleans, La., for Leon Godchaux Clothing Co., Ltd.
 
 
 4
 Montgomery, Barnett, Brown & Read, Daniel Lund, New Orleans, La., for Southern Fashions, Inc., d/b/a Gus Mayer Stores.
 
 
 5
 Mary Hotard Becnel, Reserve, La., pro se.
 
 
 6
 Appeal from the United States District Court for the Eastern District of Louisiana.
 
 
 7
 Before CLARK, Chief Judge, REAVLEY and RANDALL, Circuit Judges.
 
 PER CURIAM:
 
 8
 The district court granted the defendants' motion to dismiss for failure to state a claim. See Fed.R.Civ.P. 12(b)(6). We affirm.
 
 
 9
 We construe the complaint in the light most favorable to plaintiff and we take her allegations as true. The defendants are six New Orleans department stores. Each of these stores charges for alterations on clothing sold in its women's department, but does alterations on clothing sold in its men's department free of charge. While the complaint contains no specific allegation of conspiracy, we will assume for the purposes of decision that the alteration policies are the result of an agreement among the defendants.
 
 
 10
 Plaintiff says that she has stated a claim of gender discrimination under sections 1983 and 1985(3) of 42 U.S.C.[1]
 
 A. Section 1983
 
 11
 Section 1983 grants a cause of action to a person deprived of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States against any person acting under color of state law. Apparently,[2] the right secured by the Constitution at issue here is the Fourteenth Amendment right to equal protection of the laws. The Fourteenth Amendment protects individuals only against state action.[3] The plaintiff argues that there is state action in this case because the state has not acted to stop the defendants' long-standing tailoring practices.
 
 
 12
 A state's "mere acquiescence" does not convert private action into state action. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 164, 98 S.Ct. 1729, 1737, 56 L.Ed.2d 185 (1978). Nor can private action be converted into state action "by the simple device of characterizing the State's inaction as 'authorization' and 'encouragement.' " Id. at 164-65, 98 S.Ct. at 1738. "(S) uch a holding would utterly emasculate the distinction between private (and) state conduct .... (W)here the impetus for the discrimination is private, the State must have 'significantly involved itself with invidious discriminations,' ... in order for the discriminatory action to fall within the ambit of the constitutional prohibition." Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 173, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1972) (quoting Reitman v. Mulkey, 387 U.S. 369, 380, 87 S.Ct. 1627, 1634, 18 L.Ed.2d 830 (1967)).
 
 
 13
 Plaintiff's bare allegation of state tolerance of a long-standing business custom falls far short of the requisite "significant involvement." Its inadequacy is easily demonstrated by a review of the cases in which the Supreme Court has found no state action. In Flagg Brothers, the state did not merely fail to prevent the private party's sale of plaintiff's property without a prior hearing; it authorized such action by statute. See 436 U.S. at 151-55, 98 S.Ct. at 1731-33. In Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), the state had approved the defendant public utility's tariff providing that services could be cut off without a hearing, and had granted the utility a monopoly in a business "affected with a public interest." See id. at 351-57, 95 S.Ct. at 454-57. In Moose Lodge, the state had granted a liquor license to a private club that refused to have blacks as members or serve them as guests, and had thereby potentially limited the availability of licenses for non-discriminatory organizations. See 407 U.S. at 175-77, 92 S.Ct. at 1972-73. In each of these cases, the level of state involvement was more significant than it is in this case; yet, in each case the Supreme Court held that the defendants' actions were not state action. Plaintiff alleges state inaction, and nothing more. In the context of private business practices carried out on private business premises, state inaction is not enough.
 
 
 14
 There are cases where a state's inaction amounts to adoption of the private party's actions. An example is Jennings v. Patterson, 488 F.2d 436 (5th Cir. 1974). In that case, white property owners put a barricade across a public road in order to prevent their black neighbors living on the other side of the barricade from using the road. We had little trouble concluding that the state's failure to remove the barricade was sufficient state action to support a § 1983 suit against both the private property owners and state officials. Id. at 441.
 
 
 15
 Our holding today is not inconsistent with Patterson. In Patterson, the state officials had a clear duty to act, not pursuant to any provision of the United States Constitution, but pursuant to the state's normal function and responsibility to keep its public roads free of obstacles. The state officials had permitted the private landowners to convert public property to their own discriminatory design. There was ample reason to conclude that, in failing to do what they would unquestionably have done in the case of any other obstacle on a public road, the state officials had adopted the discriminatory acts of the private landowners.
 
 
 16
 The situation is much different in this case: it is not the normal function or duty of the state to tell private businesses how to charge for their services, and defendants are not conducting their allegedly discriminatory alteration policies on public property. As Flagg Brothers and Jackson make clear, state inaction with respect to the business practices of private businesses is not state action.[4]
 
 B. Section 1985(3)
 
 17
 We outlined the elements of a claim under 42 U.S.C. § 1985(3) in McLellan v. Mississippi Power & Light Co., 545 F.2d 919, 923, 924-28 (5th Cir. 1977) (en banc). We need deal with only one of those elements here-the requirement that the defendants' conduct be unlawful independent of § 1985(3). Id. at 924-28.
 
 
 18
 Plaintiff's sole argument is that defendants' tailoring practices are prohibited by Article I, § 12 of the Louisiana Constitution, which provides:In access to public areas, accommodations, and facilities, every person shall be free from discrimination based on race, religion, or national ancestry and from arbitrary, capricious, or unreasonable discrimination based on age, sex, or physical condition.
 
 
 19
 The district court held that defendants' conduct did not violate this constitutional provision because it in no way discriminated against women "(i) n access" to defendants' "public areas, accommodations, and facilities."[5] We agree.
 
 
 20
 Judicial interpretation of Article I, § 12, which became part of Louisiana's organic law in 1974, is sparse. Thus, we turn to general principles of construction to determine its meaning.
 
 
 21
 The Louisiana courts construe the state constitution in the same manner as other laws, invoking the provisions of the Civil Code on the application and construction of laws. See Roberts v. City of Baton Rouge, 236 La. 521, 557 & n.9, 108 So.2d 111, 124 & n.9 (1958) (on rehearing); State v. Bradford, 242 La. 1095, 1118, 141 So.2d 378, 386 (1962) (on rehearing). Article 14 of the Civil Code provides that "(t)he words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words."
 
 
 22
 The word "access" is generally defined to mean the "ability to enter, ... (to) pass to and from, ... to obtain or make use of." Webster's Third International Dictionary 11 (1966). Plaintiff does not allege that defendants' actions are in any way an attempt to discourage her from entering their business establishments or making use of their services. To the contrary, it is clear that defendants are eager to have women enter their premises and use their services.
 
 
 23
 We agree with the district judge that Article I, § 12 was simply not intended to reach the type of discrimination alleged here. "A federal district court judge's determination on the law in his state is, as a rule, entitled to great weight on review.... (W)here the state law is uncertain, we are hesitant to second guess the federal district court judge." Avery v. Maremont Corp., 628 F.2d 441, 446 (5th Cir. 1980).
 
 
 24
 Plaintiff points to no other law that defendants may have violated, and we have found none. Since defendants' conduct is not independently unlawful, plaintiff cannot prevail on her claim under 42 U.S.C. § 1985(3).
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 Plaintiff also says she has stated a claim under 42 U.S.C. § 1981, but this contention is foreclosed by Bobo v. ITT, Continental Baking Co., 662 F.2d 340 (5th Cir. 1981)
 
 
 [2]
 We say "apparently" because in her brief plaintiff fails to identify the federal right under which she claims relief
 
 
 [3]
 "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S.Const., amend. XIV, § 1; see The Civil Rights Cases, 109 U.S. 3, 10-18, 3 S.Ct. 18, 21-26, 27 L.Ed. 835 (1883), followed in Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978)
 
 
 [4]
 Plaintiff's reliance on Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), for the proposition that state acquiescence can convert private action into state action, is misplaced. Adickes was an action by a white woman who alleged that a restaurant refused to serve her because she was in the company of blacks. On reversing a directed verdict against her, the Supreme Court held that on remand she could establish a violation of the equal protection clause if she could prove that the restaurant owner's actions were taken pursuant to a "state-enforced custom requiring racial segregation" in restaurants. Id. at 148, 90 S.Ct. at 1603 (emphasis added); see id. at 169-71, 90 S.Ct. at 1614-15. Plaintiff in this case does not claim that the state requires the defendants' tailoring policies. To the contrary, her only relevant allegation is that state law prohibits the defendants' policies. See part B. infra
 
 
 [5]
 We express no view on whether any portions of defendants' business establishments or services are indeed "public areas, accommodations, and facilities" within the meaning of Article 1, § 12